Approved: _____
STEPHANIE LAKE
Assistant United States Attorney

Before:  HONORABLE DEBRA FREEMAN
Chief United States Magistrate Judge
Southern District of New York

16 MAG 4097

------------------------------------ X
                                     :
UNITED STATES OF AMERICA             :   SEALED COMPLAINT
                                     :
                                     :   Violations of 18 U.S.C.
            -v.-                     :   §§ 922(g), 924(c), and 21
                                     :   U.S.C. § 841.
TERRY CHAPPELL,                      :
                                     :   COUNTY OF OFFENSE:
            Defendant.               :   BRONX
                                     :
------------------------------------ X

DOC # 1

SOUTHERN DISTRICT OF NEW YORK, ss.:

TYLER MICELI, being duly sworn, deposes and says that he is an Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and charges as follows:

COUNT ONE

1. On or about May 29, 2016, in the Southern District of New York, TERRY CHAPPELL, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, willfully and knowingly, did possess in and affecting commerce, a firearm, to wit, a Colt, model Challenger, .22 long rifle caliber pistol, which previously had been shipped and transported in interstate and foreign commerce; and ammunition, to wit, .22 long rifle cartridges.

(Title 18, United States Code, Section 922(g)(1).)

COUNT TWO

2. On or about May 29, 2016, in the Southern District of New York, TERRY CHAPPELL, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the possession with intent to distribute a controlled substance

charged in Count Three of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

### COUNT THREE

3. On or about May 29, 2016, in the Southern District of New York, TERRY CHAPPELL, the defendant, intentionally and knowingly did distribute and did possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

4. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of cocaine base.

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

5. I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6. In the course of this investigation, I have spoken with an NYPD Sergeant (the "Sergeant") who participated in the arrest of TERRY CHAPPELL, the defendant. Based on my conversations with the Sergeant, I have learned, in sum and substance, and among other things, the following:

   a. At approximately 2:00 p.m. on or about May 29, 2016, a Police Officer ("Officer-1") reported to the Sergeant that Officer-1 had received a telephone call from a concerned citizen (the "Concerned Citizen") earlier that afternoon. The Concerned Citizen reported that there was a person in the vicinity of West Tremont Avenue and University Avenue in the Bronx, New York ("West Tremont and University"), who might have a firearm.

    b. The Sergeant, Officer-1, and another police officer ("Officer-2") drove to the vicinity of West Tremont and University in an unmarked car ("Car-1"), wearing plain clothes.

    c. A third police officer ("Officer-3") drove separately to the vicinity of West Tremont and University in another unmarked car ("Car-2").

    d. While parked in the vicinity of West Tremont and University, Officer-1 spoke with the Concerned Citizen by telephone again. The Concerned Citizen provided a description of the suspect, *see infra* ¶ 7(b), indicated that the suspect was still in the vicinity of West Tremont and University, and reported that the suspect had a firearm.

    e. Car-1 subsequently drove towards the intersection of West Tremont and University. As Car-1 turned left onto University Avenue, the Sergeant, Officer-1, and Officer-2 identified an individual matching the description of the suspect that the Concerned Citizen had provided. That individual was later identified as CHAPPELL.

    f. Officer-2, who was in Car-1, told the Sergeant and Officer-1 that he observed CHAPPELL hand something to another individual.

    g. The Sergeant and Officer-2 exited Car-1 and approached CHAPPELL, who was walking towards them. The Sergeant gestured towards CHAPPELL and greeted CHAPPELL verbally.

    h. CHAPPELL lifted his arms in a return gesture, causing his shirt to rise above the waistband of his pants. As CHAPPELL gestured, Officer-3 was approaching CHAPPELL on foot from the opposite direction the Sergeant and Officer-1 had approached. CHAPPELL's back was therefore to Officer-3 as Officer-3 approached.

    i. Officer-3 observed the butt of a firearm protruding above the left, back side of CHAPPELL's waistband as CHAPPELL lifted his arms. Officer-3 removed the firearm from CHAPPELL's waistband, and Officer-3 secured the firearm in Officer-3's pocket.

    j. CHAPPELL was arrested and placed into Car-2 to be transported to the police station. While in transit, the Sergeant noticed that CHAPPELL moved a significant amount. In the Sergeant's training and experience, this type of movement was consistent with a suspect attempting to hide contraband.

    k. While in transit, without prompting from law enforcement, CHAPPELL stated, in sum and substance, "today is not my day."

   7. In the course of this investigation, I have spoken with Officer-2. Based on my conversations with Officer-2, I have learned, in sum and substance, and among other things, the following:

    a. While Car-1 was parked near West Tremont and University, Officer-1 spoke with the Concerned Citizen on the telephone, with Officer-1's telephone set to speakerphone. The conversation was audible to Officer-2, who was also in Car-1.

    b. During that conversation, the Concerned Citizen provided a description of a suspect who the Concerned Citizen believed had a gun and was selling drugs. Officer-2 heard the Concerned Citizen describe the suspect as a black man, approximately 5'4" or 5'5" tall, wearing a blue hat, a multi-colored shirt with stripes, green sneakers, and grey sweatpants. The Concerned Citizen further stated that the suspect had gone into a liquor store located on University Avenue.

    c. As Car-1 turned left from West Tremont Avenue onto University Avenue, Officer-2 identified an individual exiting a liquor store on University Avenue who matched the description provided by the Concerned Citizen. That individual was TERRY CHAPPELL, the defendant.

    d. Officer-2 observed CHAPPELL hand an object to another individual who approached CHAPPELL in the street. Based on his training and experience, this interaction appeared to Officer-2 to have been a hand-to-hand drug sale.

    e. After the officers arrested CHAPPELL and brought him to the police station, Officer-2 performed a routine search of CHAPPELL's pockets. In the course of that search, Officer-2 found 5 pills in CHAPPELL's pants pocket. Based on Officer-2's training and experience, Officer-2 believed those pills to be Clonazepam. Officer-2 deposited the pills into a narcotics envelope.

    f. The Sergeant requested that Officer-2 perform a strip search on CHAPPELL.

    g. While performing the strip search, Officer-2 recovered a small clear bag tucked between the waistband of CHAPPELL's sweatpants and the waistband of a pair of shorts that

CHAPPELL wore under his sweatpants. The small clear bag contained 26 individually wrapped packets of what, in Officer-2's training and experience, Officer-2 believed to be crack cocaine. Officer-2 deposited the packets into a narcotics envelope.

8. In the course of this investigation, I have watched a video recording taken from a security camera located on or about West Tremont Avenue, near the intersection with University Avenue, in the Bronx, New York. The video recording includes video taken at or about 3:05 pm on May 29, 2016. Based on my review of the video, I have learned, in sum and substance, and among other things, the following:

   a. An individual matching the description that the Concerned Citizen provided of the individual who has since been identified as TERRY CHAPPELL, the defendant, walked west on West Tremont Avenue.

   b. A second individual approached CHAPPELL, and CHAPPELL handed the second individual an object. The second individual appeared to put that object into his mouth.

   c. The second individual and CHAPPELL then turned and began walking east on West Tremont Avenue. Several seconds later, Officer-3 entered the frame, and walked quickly east on West Tremont Avenue, in the direction CHAPPELL had walked.

9. In the course of this investigation, I have watched a video recording of a custodial interview of TERRY CHAPPELL, the defendant, by a detective assigned to the 46th Precinct of the NYPD who was involved in the investigation (the "Detective"). Based on my review of the video, I have learned, in sum and substance, and among other things, the following:

   a. TERRY CHAPPELL, the defendant, was advised of his Miranda rights orally, orally waived those rights, and agreed to speak with the Detective.

   b. CHAPPELL admitted to possessing the firearm that Officer-3 recovered from CHAPPELL.

   c. CHAPPELL admitted that a police officer had found crack cocaine on CHAPPELL's person. CHAPPELL also stated that he has used crack cocaine. Based on my training and experience, possession of 26 individually-wrapped bags of crack cocaine is not consistent with personal use of crack cocaine.

Instead, crack cocaine in that quantity and packed in that manner typically is intended for sale.

       10.  I have reviewed an NYPD Firearms Report, which identifies the firearm that was recovered from TERRY CHAPPELL, the defendant, as a Colt, model Challenger, .22 long rifle caliber pistol.

       11.  I have reviewed a NEXUS Firearms Report, which confirmed that the recovered firearm was manufactured outside of the State of New York.

       12.  I have reviewed NYPD Laboratory Reports, which identify the 26 individually wrapped packets recovered from TERRY CHAPPELL, the defendant, during the in-custody strip search as 1.982 grams of a substance containing a detectable amount of cocaine base.

       13.  I have reviewed criminal history records pertaining to TERRY CHAPPELL, the defendant, which show that CHAPPELL has sustained multiple felony convictions, including, most recently, a conviction on or about October 25, 2010, in the Supreme Court of the State of New York, Bronx County, of Grand Larceny in the Fourth Degree, in violation of New York Penal Law § 155.30, a felony, which is punishable by imprisonment for more than one year.

       WHEREFORE, deponent prays that TERRY CHAPPELL, the defendant, be imprisoned or bailed, as the case may be.

_____
TYLER MICELI
Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to before me this
24th day of June, 2016

_____
HONORABLE DEBRA FREEMAN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK